UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| COLLEEN A. HAYES-SCHNEIDERJOHN, et al., | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) ) ) No. 4:14-CV-01547-JCH |
| GEICO GENERAL INSURANCE COMPANY, | ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant GEICO General Insurance Company's ("Geico") Motion for Summary Judgment. (ECF No. 18). The Motion has been fully briefed and is ready for disposition.

## BACKGROUND

The essential facts are not in dispute. "On September 16, 2009, Plaintiff Colleen Hayes-Schneiderjohn [("Hayes-Schneiderjohn")] was driving her 2002 Infiniti QX4 on the Daniel Boone Bridge in Saint Charles, Missouri." (Geico Uncontroverted Material Facts, "GUMF," ECF No. 20, ¶ 1). At that time, the erratic driving of an unknown driver caused traffic to slow. *Id.* ¶ 3. Timothy Wylder, a driver for Beckmann Distribution Services, Inc. ("Beckmann"), failed to slow down with the traffic and rear-ended Hayes-Schneiderjohn's car. *Id.* ¶¶ 2-4. Hayes-Schneiderjohn and her husband, Plaintiff John Schneiderjohn ("Schneiderjohn") then filed suit against Wylder and Beckmann for personal injuries and loss of consortium on January 19, 2012. *Id.* ¶ 5. On August 20, 2013, that suit settled for $100,000, an amount paid to Plaintiffs by an insurance company on behalf of Beckmann and Wylder. *Id.* ¶¶ 8-9.

1

At the time of the accident, Plaintiffs were covered under a motor vehicle insurance policy issued by Geico (the "Policy"), which included uninsured motorist coverage ("UM Coverage"). *Id.* ¶ 11. "The Policy provided a $50,000 per person UM Coverage limit, which, when stacked for the two vehicles insured under the [P]olicy, combines for a total of $100,000 in available UM Coverage." *Id.* ¶ 13. On June 5, 2014, Plaintiffs filed suit against Geico "for uninsured motorist coverage, loss of consortium and vexatious refusal to pay." (Plaintiffs' Uncontroverted Material Facts, "PUMF," ECF No. 25, ¶ 2). Geico timely removed the case to this Court on September 10, 2014, (Removal Notice, ECF No. 1), and now seeks summary judgment against Plaintiffs.

## SUMMARY JUDGMENT STANDARD

Under the Federal Rules of Civil Procedure, courts must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment is particularly appropriate in a situation such as this one, in which there are no factual disputes and disposition of the motion turns on the purely legal question of insurance policy interpretation.

## DISCUSSION

Geico contends it is entitled to summary judgment because Plaintiffs' claims are subject to "a liability limitation that provide[s] a setoff of the policy limits for *'all amounts (a) paid by or for all persons or organizations liable for the injury . . .*'" (Motion at 2). Since Plaintiffs have already recovered $100,000 in settlement of their lawsuit against Wylder and Beckmann, this setoff provision precludes recovery under the Policy, which has a $100,000 limit in this particular case. *Id.* at 3. Moreover, the setoff provision is not contrary to Missouri public policy and cannot be avoided on that basis. *Id.* at 4.

Plaintiffs respond that the setoff provision is ambiguous and therefore should be construed against Geico. (Plaintiff Response, ECF No. 23, at 4-8). The provision is ambiguous, Plaintiffs maintain, both because of the way in which it is arranged and because its language is unclear. *Id.* at 5-8. Plaintiffs contend in the alternative that the setoff provision violates Mo. Rev. Stat. § 379.203, under which every car insurance policy in Missouri must have at least $25,000 in UM Coverage. *Id.* at 8. Any attempt by an insurance company to reduce coverage below the statutory minimum violates the public policies underlying the statute. *Id.* at 10.

    A. *Whether the Setoff Provision is Ambiguous*

It is first necessary to determine whether the setoff provision can be applied to reduce Plaintiffs' recovery, which requires interpretation of the Policy. In Missouri, the language of an insurance policy must "be given its plain meaning. If the language is unambiguous the policy must be enforced according to such language." *Robin v. Blue Cross Hosp. Serv., Inc.*, 637 S.W.2d 695, 698 (Mo. 1982) (*en banc*) (internal citations omitted). Where policy language is ambiguous, however, the language "will be construed against the insurer." *Id.* "In an insurance policy, ambiguity arises when there is duplicity, indistinctness or uncertainty of meaning. When the language of an insurance policy is reasonably and fairly open to different constructions it is ambiguous." *Nixon v. Life Investors Ins. Co. of Am.*, 675 S.W.2d 676, 679 (Mo. Ct. App. 1984) (internal citation omitted).

The setoff provision appears in the "Limits of Liability" subsection of the Policy's UM Coverage section as follows:

> LIMITS OF LIABILITY
>
> Regardless of the number of autos or ***trailers*** to which this policy applies:
>
> 1. The limit of liability for Uninsured Motorists Coverage stated in the declarations as applicable to "each person" is the limit of our liability

>    for all damages, including those for care or loss of services, due to ***bodily injury*** to one person as the result of one accident.
>
> 2. The limit of liability stated in the declarations as applicable to "each accident" is, subject to the above provision respecting each person, the total limit of our liability for all such damages, including damages for care and loss of services, because of ***bodily injury*** to two or more persons as the result of one accident.
>
>    The amount payable under this Coverage will be reduced by all amounts:
>
>    (a) Paid by or for all persons or organizations liable for the injury;
>    (b) Paid or payable under the Bodily Injury Coverage; or
>
>    There will be no reduction in the amount payable under this coverage for amounts paid or payable for medical payments coverage, workers' compensation or any disability benefits or similar law.

(Policy, ECF No. 20-10, at 16).

Plaintiffs contend first that the format of the setoff provision creates an ambiguity. Specifically, they contend that the setoff provision seems to modify only subparagraph 2, which means only "the applicable 'each accident' UM Coverage limit is reduced by specified amounts." (Plaintiff Response at 6). The setoff therefore does not apply "to the 'per person' limits available to Hayes-Schneiderjohn." *Id.* Geico responds that the "Coverage" referenced in the opening line of the setoff provision is plainly UM Coverage, and the setoff provision therefore applies to UM Coverage as a whole. (Geico Reply, ECF No. 30, at 4-5). Focusing solely on the placement of the provision distorts the clear meaning of the provision and violates the principle that "courts are to 'read insurance policies as a whole to determine the parties' intent . . . .'" *Id.* (quoting *Doe Run Res. Corp. v. Certain Underwriters at Lloyd's London*, 400 S.W.3d 463, 474 (Mo. Ct. App. 2013)).

Plaintiffs are correct that the format of the setoff provision is confusing. There is no separate numbering or other mode of demarcation to indicate that the first phrase of the setoff

provision, "The amount payable under this Coverage[,]" is intended to establish a new line of limitations. Because of this lack of demarcation, the setoff provision appears at first glance to be a continuation of, and therefore a modification only of, the paragraph establishing limitations for "each accident." But this poor drafting is not enough to create an ambiguity because, despite the confusing format, the actual language used is susceptible to only one reasonable construction.

On a closer reading, subparagraph 2 and the setoff provision are too incongruous to relate to each other in the sense suggested by Plaintiffs. Subparagraph 2 sets definite limits on payouts resulting from bodily injury to two or more persons. The setoff provision then limits "[t]he amount payable under this Coverage[,]" which is plainly a reference to UM Coverage in general. This reference to UM Coverage is an indication that the setoff provision applies to all UM Coverage claims. Moreover, the "each accident" and "each person" limits expressly relate to each other under the language of the provision.[1] They are not distinct categories of recovery such that a setoff could apply to one and not the other, but rather distinct limitations on claims under UM Coverage. Plaintiffs' effort to separate them into two entirely distinct categories and apply the setoff provision to one, while it has some facial appeal due to the formatting, is therefore not a reasonable way to construe the provision. Thus, while the Court has some reservations about the lack of the setoff provision's clarity, it is not reasonably susceptible to differing constructions based on the formatting.

Nor are Plaintiffs' efforts to inject ambiguity into the language itself availing. Plaintiffs contend that "[t]he policy states the UM coverage limits will be reduced by all amounts paid by or for all persons or organizations liable for the injury and paid or payable under the Bodily Injury Coverage, **or** there will be no reduction in the amount payable under this coverage for

---

[1] Subparagaph 2 makes the each accident limit "subject to the above provision respecting each person . . . ."

amounts paid or payable for medical payments coverage, workers compensation or any disability benefits or similar law." (Plaintiff Response at 7). It relies for this position in part on the "; or" that follows the "Paid or payable under the Bodily Injury Coverage . . . ." *Id.* Defendants respond that Plaintiffs' position "is at war with a plain reading of the set-off provision because there is no *and* linking subsections (a) and (b) of the set-off provision." (Geico Reply at 6).

Geico has the better of this argument because Plaintiffs' construction is not a reasonable one. First, Geico is correct to point out that Plaintiffs' reading of the setoff provision would require a conjunctive "and" to be possible. Reading a conjunctive into the provision where none has been included is too much of a strain. *See Haggard Hauling & Rigging Co. v. Stonewall Ins. Co.*, 852 S.W.2d 396, 401 (Mo. Ct. App. 1993) ("The rule requiring that an insurance policy be construed favorably to an insured in cases of ambiguity does not permit a strained interpretation of the language of the policy in order to create an ambiguity"). Moreover, obvious typographical errors are insufficient to create an ambiguity in Missouri. *Mendota Ins. Co. v. Ware*, 348 S.W.3d 68, 71-74 (Mo. Ct. App. 2011). The "; or" at the end of subparagraph (b) of the setoff provision, which is part of the basis for Plaintiffs' theory, is clearly misplaced. A reasonable insured would understand that a typographical error caused the "; or" to be placed at the end of subparagraph (b) instead of subparagraph (a). Any other reading strains common sense. There is therefore no ambiguity in the language of the setoff provision, which establishes a reduction in recovery for any amount "paid by or for all persons or organizations liable for the injury . . . ."

### B. *Whether the Setoff Provision Violates Missouri Public Policy*

Plaintiffs next contend that Defendants should not be granted summary judgment because the setoff provision violates Missouri public policy to extent it would reduce Plaintiffs' recovery under the UM Coverage below Missouri's statutory minimum. (Plaintiff Response at 8).

6

Plaintiffs note that Mo. Rev. Stat. § 379.203 "mandates that every policy of insurance issued in the State of Missouri have at least $25,000 per person and $50,000 per occurrence available in UM coverage." *Id.* According to Plaintiffs, any attempt to reduce Plaintiffs' recovery below that amount violates the policy underlying § 379.203. *Id.*

Geico responds that because Plaintiffs have already received more than the statutory minimum in a separate recovery, any setoff of their UM Coverage does not violate Missouri public policy. (Geico Reply at 9-10). The setoff provision therefore can be used to reduce Plaintiffs' recovery in its entirety, rather than only to the $25,000 statutory minimum. *Id.* at 9. It relies for this proposition on *Tatum v. Van Liner Ins. Co. of Fenton, Mo.*, 104 F.3d 223 (8th Cir. 1997), an Eighth Circuit case it contends is controlling here.

As a preliminary matter, Geico's contention that *Tatum* is "controlling law" in this case, (Geico Reply at 8), is incorrect. This is a diversity case involving the application of Missouri state law. In such cases, federal courts "are bound by state court decisions as well as state statutes." *Hanna v. Plumer*, 380 U.S. 460, 465 (1965) (citing *Erie R. co. v. Tompkins*, 304 U.S. 64 (1938)). This principle includes state court interpretations of state statutes. *Becker v. Lockhart*, 971 F.2d 172, 174-75 (8th Cir. 1992). It also includes matters of first impression under a state statute, in which case a federal court's role is not simply to follow the earlier holding of another federal court, but rather to predict how the state's highest court would decide the issue. *See, e.g.*, *Brandenburg v. Allstate Ins. Co.*, 23 F.3d 1438, 1440 (8th Cir. 1994). *Tatum* therefore controls this case only to the extent it accurately represents Missouri law on the question of whether a setoff provision like the one at issue here violates Missouri public policy.

The Missouri public policy implicated in this case is based on § 379.203, which, as Plaintiffs correctly note above, "requires that policies include uninsured motorist coverage with

limits at least equaling" $25,000. *Am. Standard Ins. Co. of Wisconsin v. Bracht*, 103 S.W.3d 281, 288 (Mo. Ct. App. 2003). "The purpose of section 379.203 is to establish a minimum level of protection equivalent to the liability coverage the insured would have received had the insured been involved in an accident with an insured tortfeasor." *Rice v. Shelter Mut. Ins. Co.*, 301 S.W.3d 43, 46 (Mo. 2009) (*en banc*). The issue in most cases involving a setoff provision is not whether the setoff provision can be applied at all, but rather whether the setoff provision can be used to reduce uninsured motorist recovery below the $25,000 statutory minimum. *See, e.g.*, *Halpin v. Am. Family Mut. Ins. Co.*, 823 S.W.2d 479, 483 (Mo. 1992) (*en banc*). Applying these principles, Missouri courts have prohibited setoff provisions from reducing recovery below the § 379.203 minimum based, for example, on a prior recovery in the form of worker's compensation. *Douthet v. State Farm Mut. Auto. Ins. Co.*, 546 S.W.2d 156, 159 (Mo. 1977) (*en banc*).

The Eighth Circuit was faced in *Tatum* with the question of whether a setoff provision could, under Missouri law, completely reduce uninsured motorist recovery based on the receipt of a settlement from an insured responsible party. *Tatum* involved facts almost identical to the ones here. The insured in *Tatum* was driving in a tractor-trailer. *Tatum*, 104 F.3d at 224. "[A] red Ford Escort[] swerved in front of the truck. When [the insured] applied his brakes, the truck he was driving was struck from the rear by a second tractor trailer . . . ." *Id.* The insured received a $150,000 settlement in a suit based on that accident. *Id.* The insured then tried to recover under his uninsured motorist coverage, which contained a setoff provision almost identical to the one here in that it reduced the amount payable "by all sums paid by or for anyone who is legally responsible" for the injuries sustained. *Id.* The Eighth Circuit held the $150,000 settlement could,

without violating Missouri public policy, act as a complete setoff of any amount the insurance company would otherwise have been required to pay in uninsured motorist coverage. *Id.*

In reaching its conclusion, the *Tatum* court relied on a Missouri Supreme Court case, *Ragsdale v. Armstrong*, 916 S.W.2d 783 (Mo. 1996) (*en banc*) (*per curiam*). This reliance makes the *Tatum* opinion somewhat problematic, as *Ragsdale* is a difficult case to understand. The facts and result are simple enough. The insured was involved in a car accident with another driver and obtained a $10,000 settlement from the other driver, which was the limit of the other driver's liability insurance. *Ragsdale*, 916 S.W.2d at 784 (Benton, J., concurring in result). The insured had uninsured motorist coverage under two policies that totaled $150,000. *Id.* (Benton, J., concurring in result). The state circuit court found the insured should be entitled to the stacked policy limit of $150,000 less the $10,000 he obtained in the settlement, and the Missouri Court of Appeals affirmed. *Id.* (Benton, J., concurring in result). The Missouri Supreme Court agreed that the insured was entitled to recover but disagreed as to the amount. *Id.* (*per curiam* opinion). It held that the insured could only recover $40,000, which amounts to the stacked statutory minimum for the two policies reduced by the $10,000 already recovered. *Id.* (*per curiam* opinion). Thus, the Missouri Supreme Court held that, where a settlement has been received an insured responsible party, to reduce recovery below the statutory minimum established by § 379.203 does not violate Missouri public policy. *See id.* (*per curiam* opinion).

The process by which the *Ragsdale* court reached this conclusion, however, is not so straightforward. The court, sitting *en banc*, issued a short *per curiam* opinion stating the conclusion described above.[2] But of the four judges who filed separate opinions, only one judge

---

[2] The whole of the *per curiam* opinion is as follows: "Four judges would reverse the judgment of the circuit court. Four judges would allow respondents to recover at least $40,000 under the two policies at issue. Accordingly, the judgment of the circuit court is reversed and the case is remanded for entry of

9

filed an opinion indicating that he agreed fully with the result. *Id.* at 784 (Price, J., concurring). Three other judges concurred in the result, but joined in a separate opinion in which they explained their reasons for believing that "[t]he judgment of the circuit court should be affirmed[,]" which would have allowed the insured to recover $140,000. *Id.* at 784-85 (Benton, J., concurring in result). The three remaining judges dissented, and two of them filed separate dissenting opinions. *Id.* at 785-787. In short, the only clear aspect in *Ragsdale* is the result. The reasoning and methods underlying that result are, as the Eighth Circuit noted in *Tatum*, "enigmatic . . . ." *Tatum*, 104 F.3d at 225.

Nevertheless, the result in *Ragsdale*, viewed separately from the conflicting opinions filed with it, is the best indicator of whether the Missouri Supreme Court would allow a complete setoff in this particular situation. As noted above, Missouri courts have prohibited a complete setoff in other situations, such as setoffs based on the receipt of workers' compensation benefits. But in a situation similar to this one, where a setoff was sought based on the amount of a settlement between the insured and an insured responsible party, the *Ragsdale* court allowed a reduction of uninsured motorist recovery below the statutory minimum. It is therefore reasonable to conclude that, faced with the substantially similar facts of this case, the Missouri Supreme Court would find that a complete setoff does not violate Missouri public policy.

Since the setoff provision at issue here both applies and is not contrary to Missouri public policy, the $100,000 settlement Plaintiffs obtained acts as a complete setoff of their $100,000 UM Coverage limit. Plaintiffs therefore are not entitled to recover any amount under their UM Coverage.

---

judgment in respondents' favor in the amount of $40,000, plus such other costs or assessments as are consistent herewith." *Ragsdale*, 916 S.W.2d at 783-84.

Accordingly,

**IT IS HEREBY ORDERED** that Defendant GEICO General Insurance Company's Motion for Summary Judgment, (ECF No. 18), is **GRANTED**, and Plaintiffs' claims are **DISMISSED WITH PREJUDICE**. A separate judgment will accompany this Memorandum and Order.

Dated this 10th Day of April, 2015.

/s/ Jean C. Hamilton
UNITED STATES DISTRICT JUDGE